69  263
's72  198

## STANLEY BOTSFORD vs. FRANK A. WALLACE.

Third Judicial District, Bridgeport, April Term, 1897. ANDREWS, C. J., TORRANCE, FENN, BALDWIN and HAMERSLEY, JS.

L, the owner of a lot on which were two stores separated by a passageway, quitclaimed the northerly part and the store thereon, in 1871, by a deed providing that "while" a specified portion of the land conveyed (designated here as the back-yard) "should be used in common with myself and the releasee, a pass-way ten feet wide on the south side of said premises shall be granted and allowed to the said releasee." In 1884 the plaintiff, who had become the owner of this lot, erected a brick store and tight board fence thereon, and thereby excluded the successive owners of the southerly part of the original tract from using any portion of the back-yard. *Held* that whatever the nature of the right of way created by the deed of 1871 might be, it did not survive the extinction of the correlative right of the grantor and his assigns to the use of the back-yard; and that inasmuch as the latter use had been permanently prevented by the acts of the plaintiff, his right to use the pass-way thereupon ceased.

After *L's* death, his widow, in 1883, quitclaimed to the plaintiff's grantor any possible interest she had in the land conveyed to him, and referred to the premises as bounded "south on pass-way fifty-eight feet." *Held* that this reference was natural, as the pass-way then existed as a visible land mark, and did not enlarge the easement previously created by her husband's deed.

In 1884 the plaintiff bought of *L's* widow a strip of land eleven feet wide adjacent to the rear of his lot. *Held* that he was in no better position then if his front had been wholly vacant and unimproved, and that he could not claim a way of necessity to this strip over her other land. *Held* also, that the failure of *L's* widow to include a narrow strip of land adjoining the pass-way, in her deed of 1890 to the defendant, in consequence of which she might possibly have acquired a way of necessity to it, could not enlarge the plaintiff's estate in any way in respect to the land she had conveyed to the defendant.

An exception in a covenant against incumbrances, of "such rights of pass-way, if any, as may exist of record," is not an admission that there are such rights.

Where there is no ambiguity in the deeds under which the parties claim, extrinsic testimony as to their practical construction is inadmissible.

Mere user for less than fifteen years, however open and continuous, cannot establish a right of way. Nor does such user constitute an ouster of the owner of the soil which will prevent him from conveying the fee.

A way of necessity is derived from the law, and arises from the situation and boundaries of the land to which it is claimed to be appurtenant, as these existed at the time of the conveyance.

A mere oral expression of a willingness by the grantor to convey something which was not in fact conveyed, does not fall within the rule which permits proof of admissions of an owner of real estate to affect his successors in title; nor can the latter be affected by evidence of what the first grantee paid for his land, or by what he stated to the owner was his intention in purchasing.

A trial court is not bound to grant a motion to amend the complaint, made after the evidence has been partially heard.

[Argued April 20th—decided June 15th, 1897.]

SUIT for an injunction to restrain the defendant from obstructing a pass-way, brought to the Superior Court in New Haven County and tried to the court, *Shumway, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff for alleged errors in the rulings of the court. *No error.*

The material facts, as stated in the finding, were as follows :—

Lorenzo Lewis, being owner of a lot of land bounded westerly on Main street in Wallingford, on which were two stores with a passage way between, conveyed to Lewis A. Young and another, the plaintiff's grantor, in 1871, by quit-claim deed, with the usual *habendum* clause as to the tenure of the premises with all the appurtenances in the releasees and their heirs and assigns forever, the northerly part of the lot, on which was one of the stores, being a strip 25½ feet wide front and rear, and 58 feet deep, bounded southerly and easterly on his own land, and north on land of F. A. Wallace. This deed contained, after the description of the premises, the following words : " The east line of said premises is hereby intended to be parallel with the building standing on the same, and twenty (20) feet distant therefrom ; while the south half of the said twenty feet shall be used in common with myself and said releasees, a pass-way ten (10) feet wide on the south side of said premises shall be granted and allowed to the said releasees." The south half of said twenty feet, in the rear of the store, on the land conveyed, was vacant space, and Lewis continued thereafter to use it in turning around his teams while delivering goods at the rear of his own store. On December 17th, 1883, he being dead and

the rest of the land, remaining after said deed, including the latter store, being owned by his widow, Mary E. Lewis, she released by quitclaim deed to Lewis A. Young, who was then the sole owner of the premises conveyed by the deed of 1871, all right, title, interest, claim and demand to a parcel of land bounded west on Main street 25½ feet; north on land of F. A. Wallace, 58 feet; east on her own land 25½ feet, and "south on pass-way, fifty-eight feet." She had no interest in the premises released, unless a possible claim of a right to use said south half of said twenty foot back-yard, under the deed of 1871.

Immediately thereafter, Young conveyed to the plaintiff, by warranty deed, a strip of land bounded and described as follows: west by Main street, north by land of F. A. Wallace, 58 feet more or less, southerly on land of Mary E. Lewis; " the east line of said premises is hereby intended to be parallel with the buildings standing on the same, and twenty feet distant therefrom, with a pass-way ten feet wide in common with the heirs of Lorenzo Lewis on the south side of said building."

The plaintiff, in 1884, erected a brick building on his lot, covering substantially the whole width of the land, and extending to within three feet of the rear line. Shortly afterwards, in November, 1884, Mrs. Lewis conveyed to him by warranty deed a parcel of land " immediately in the rear of the brick building owned by said Botsford, and bounded and described as follows: Bounded north on land of Frank A. Wallace; east on land owned by the town of Wallingford; south on land of my own; and west on land of Stanley Botsford; being eleven (11) feet front and rear, and extending back to the land owned by the town of Wallingford, subject to a lease to the town of Wallingford to a portion of the rear land." This eleven foot strip adjoined the northerly part of the premises of the plaintiff previously described, and its south line was 14½ feet north of the north line of the pass-way.

The plaintiff immediately thereafter built a tight board fence all along the strip three feet wide, which was the rem-

nant of the back-yard heretofore described, behind his store, and all along the south line of the eleven foot strip.

In 1890, Mrs. Lewis conveyed to the defendant, by warranty deed, the rest of her land; bounding it northerly on land of the plaintiff, "from which said granted premises are separated by a line commencing on the easterly side of Main street, thence running easterly along the south side of Botsford's Block, so-called, for sixty-six (66) feet; thence northerly, at right angles, for fourteen and one half (14½) feet; thence easterly, at right angles along said Botsford's line, sixty-nine (69) feet, more or less, to town land, on the northeasterly boundary of said premises. A portion of said premises is subject to a lease to the borough of Wallingford;" and excepting from the general covenants of warranty "the lease aforesaid, and such rights of pass-way, if any, as may exist of record."

The defendant claimed that there were rights of way over the rear of the granted premises, in favor of one Beckley, which appeared of record, and introduced deeds tending to support such claim. It also appeared that the town claimed a pass-way over the rear of said premises; but neither party introduced evidence of any record title to such a pass-way. In 1894, the plaintiff inserted a gate in the fence on the south line of his eleven foot strip, and ever since has used it for bringing out ashes and other material through the pass-way on the defendant's land, to Main street. He also offered evidence to show that ever since he obtained his title, in 1883, he had used said pass-way continuously, openly, and daily. This evidence was offered to show the understanding of the parties in relation to the deed of December 17th, 1883, from Mary E. Lewis to Lewis A. Young, the plaintiff's grantor; to show that it was a right of way of necessity; to show that Mary E. Lewis was ousted of possession or disseized as to the plaintiff's right to use said pass-way at the time she gave the deed to Frank A. Wallace, the defendant; to show that said pass-way was appurtenant to the premises of the plaintiff at the time he took his deed from Lewis A. Young; and to show the practical construction put upon said deed from

the said Mary E. Lewis to Lewis A. Young, by the parties to said deed and by the plaintiff. The court ruled that said testimony was inadmissible, except so far as a user could be shown exclusively in connection with the eleven foot strip, as a way of necessity to or from said strip; and (the plaintiff not offering to show any user so limited) excluded it altogether.*

The plaintiff offered to show that he declined to buy the property from Lewis A. Young, unless he could have the right to build over the whole of it and still use the pass-way in connection with it, and that thereupon the quitclaim deed from Mary E. Lewis to Lewis A. Young was procured, and brought to him, and that thereupon Young made a warranty deed from him to the plaintiff; and in connection therewith that Lewis A. Young, the plaintiff's grantor, went with one O. I. Martin, of Wallingford, to Mary E. Lewis (who died a few years before the trial), and stated to her that Botsford desired the property, and would not buy unless he could have the right to build over the whole of it and still have the right of the pass-way, and that he then obtained from her the quitclaim deed hereinbefore mentioned; also that the said Mary E. Lewis declared at the time of giving said deed that she was willing to convey the right to use the pass-way, notwithstanding that the building was to be built over the whole premises. The plaintiff offered each part of the above, as well as the whole, for the purpose of affecting the construction of the quitclaim deed of December 17th, 1883, from Mary E. Lewis to Lewis A. Young, and for the purpose of showing an oral agreement by Mary E. Lewis, giving a right to use the pass-way; * but the court excluded it.

The plaintiff then asked leave to amend his complaint, so as to lay a further foundation for this testimony, by adding a claim for a judgment that he was entitled to the right of way alleged, and that the defendant execute and deliver to him a proper conveyance thereof. This motion was denied.

* The finding of the trial court in regard to this ruling was found to be incomplete, and rectified on the application of the plaintiff.

The plaintiff was called as a witness in his own behalf, and was asked the following questions: —

"State whether at the time you built this building you supposed you had a pass-way that would be kept open on the south side? When you bought this eleven foot strip of Mrs. Lewis did you tell her for what purpose you intended to use it? What did you pay for this eleven foot strip of land?" And the plaintiff offered to show that he paid several times what it would be worth without a pass-way to the street. The defendant objected to each of these questions, and the court excluded them, as also other evidence offered to show that when the plaintiff bought the land, he intended to build a barn upon it.

The plaintiff called Lewis A. Young, and asked: "State what land you, in fact, occupied." The court excluded the question.

The plaintiff claimed that said deed from Mary E. Lewis to Lewis A. Young, in bounding on the south on the pass-way, conveyed one half the fee in said pass-way on the southerly side of the plaintiff's land, together with the right to use the whole of said pass-way in common with the heirs and assigns of said Mary E. Lewis; and, at any rate, that it gave him the right to build over the whole of his land, and still retain the right to use said pass-way, as provided in the deed from Lorenzo Lewis, and to the same extent as if he had not occupied said southerly half of said twenty feet, and that such was the intention of the deed; and the plaintiff further claimed that he was entitled to a pass-way on the southerly side of his brick building to the piece in the rear, conveyed to him by the said Mary E. Lewis, as a way of necessity, and that he was entitled to such pass-way as a way appurtenant to each of said pieces of land; and in general that the facts found gave him the right to have the pass-way kept open on the southerly side of the piece of land sold to the plaintiff by Lewis A. Young. The court overruled all these claims.

*Henry G. Newton,* with whom was *Clifford Gilbert,* for the appellant (plaintiff).

*John W. Alling* and *O. H. D. Fowler*, for the appellee (defendant).

BALDWIN, J.   No absolute and perpetual right of way was granted by Lorenzo Lewis in his deed of 1871.   He stipulated only that " while," that is, so long as the south half of the back yard in the rear of the store on the granted premises might be used by him in common with the grantees, they should be "granted and allowed" a pass-way ten feet wide on the south side of their lot. ·

It is not clear whether this contemplated user by him was a reserved right, or a mere privilege terminable at the pleasure of his grantees ; nor whether it was a right or privilege personal to himself, or could be claimed to be a constituent part of an appurtenance to the land, created by the deed in favor of the grantees, and so, by virtue of the *habendum* clause, as enuring to the benefit of his successors and assigns. Whatever view may be taken with respect to these points, no right of way in favor of the successors of his grantees could endure after the extinction of the correlative right or privilege to the use of their land by him or his successors. The deed subjected the grantor's land to a servitude only " while " he (or perhaps his successors in title) continued to use the land of the grantees.   A potential use may have been sufficient, but, in fact, it was actually used by him thereafter during his life, and the defendant admitted that his land remained subject to the right of way claimed by the plaintiff, until the latter built his brick store in 1884.   That was a structure of a permanent character, and necessarily excluded the owners of the Lewis property from more than two-thirds of that part of the plaintiff's lot, the use of which was the expressed reason for any privilege on his part in respect to the pass-way.   From the rest of it they were also shut off, shortly afterwards, by a tight board fence.   The Superior Court was fully justified in the conclusion that the acts of the plaintiff in thus preventing the use of his land by the successors in title of Mrs. Lewis, having been acquiesced in by them, put an end to the term to which his own enjoyment

of the pass-way had been limited; for that was to continue, at most, only while such use should be maintained or permitted.

The quitclaim deed to the plaintiff's grantor by Mrs. Lewis, by bounding his lot south on the pass-way, did not enlarge the easement previously created by her husband's grant. Such a pass-way then existed, and was a visible landmark, which might naturally be referred to as a boundary. Young claimed a right to use it, under the deed of 1871, and there was nothing in her release to give him any additional rights in respect to it. It would rather tend to diminish them, by its necessary operation as a surrender of any privilege to which she might otherwise lay claim, as the successor of her husband, to the use of his back-yard. His subsequent warranty deed to the plaintiff, therefore, conveyed nothing which he had not obtained by his original purchase in 1871.

The eleven-foot strip bought by the plaintiff from Mrs. Lewis, in 1884, being adjacent to the rear of his store lot, was accessible from Main street by going over his other property. The fact that he had covered most or all of his Main street front by a brick building, did not put him in a position to claim a way of necessity over her other land. He stood no better than if his front lot had been wholly vacant and unimproved.

It is contended that as the deed given by Mrs. Lewis to the defendant in 1890, bounded his land northerly on the plaintiff's land, by a line running from Main street along the south side of Botsford's Block for 66 feet, and thence northerly at right angles $14\frac{1}{2}$ feet to other land of the plaintiff, and as the plaintiff's land adjoining the pass-way goes but 58 feet back from Main street, she did not convey a parcel of land in the rear of Botsford's Block, eight feet wide, between the eleven-foot strip and the pass-way, and must have thus had in mind the existence of a way of necessity over it. Whether this be so, or not, is immaterial in the case at bar. The plaintiff's estate would not be enlarged by any such exception (if there be one) in her grant to the defendant. The land not conveyed would simply remain hers; and if

she thereby acquired a way of necessity to it, this would in no respect tend to show that the defendant ought to concede to the plaintiff a way of necessity over the land she did convey. Her exception in the covenant against incumbrances, also, of "such rights of pass-way, if any, as may exist of record," was not an admission that there were such rights.

The various rulings upon evidence, to which the plaintiff excepts, were obviously correct. There was no ambiguity in the deeds under which the parties claimed, to remove which extrinsic testimony as to their practical construction could be received. No mere user for less than fifteen years, however open and continuous, could establish a right of way; and until 1884 it was not disputed that the right to use the pass-way, given by the deed of 1871, continued in full force. The user claimed would not tend to show that Mrs. Lewis was ousted of possession when she conveyed to the defendant in 1890. Whether rightful or wrongful, it constituted no objection to her conveying the fee of the soil. Nor was proof of user competent to show that the plaintiff had a way of necessity to his eleven-foot strip. A way of necessity is derived from the law, and depends solely on the situation and boundaries of the land to which it is claimed to be appurtenant, as these existed at the time of the conveyance.

The declarations of Mrs. Lewis did not come within the rule which permits proof of admissions of an owner of real estate to affect his successors in title. Her statement to Young, in 1883, that she was willing to convey the right to use the pass-way, notwithstanding a building might be put up covering the whole of the plaintiff's land, was a mere oral offer to do something, which she in fact never did. That the plaintiff supposed that she had done it, or that he held a deed from Young containing covenants that she had, was nothing which could in any way affect the rights of those deriving title from her by subsequent conveyances. Nor could they be affected by evidence of what the plaintiff paid for the eleven-foot strip; or of what he told Mrs. Lewis was his intention in making his purchases; or of the extent of

land in fact occupied by Young, before he parted with his title. The effect of a deed cannot thus be enlarged by parol.

The motion to amend the complaint came so late that the court was under no obligation to grant it. *Gulliver* v. *Fowler*, 64 Conn. 556.

The exceptions to the finding as to certain matters occurring at the trial, go to points which are entirely immaterial, and it is therefore unnecessary to consider whether they are supported by the evidence certified.

There is no error.

In this opinion the other judges concurred.